IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **LONNIE SHEPHERD, individually and** ) | |
| derivatively on behalf of RED ROCK ) | |
| USA, L.L.C., an Alabama Limited ) | |
| Liability Company, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Civil Action No.: CV-04-HGD-3005-J |
| ) | |
| **DANNY HALL, HYDE JENKINS,** ) | |
| **HYDE JENKINS, II, CARLA JENKINS,** ) | |
| **RED ROCK EXPRESS, VIDALIA** ) | |
| **DOCK AND STORAGE, INC.** ) | |
| **and MARTIN-MARIETTA** ) | |
| **MATERIALS, INC.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

This cause comes on to be heard upon defendants Danny Hall, Hyde Jenkins, Hyde Jenkins, II, Carla Jenkins, Red Rock Express, and Vidalia Dock and Storage, Inc.'s Objection to Magistrate Judge's Order Granting Plaintiff's Motion to Remand filed on February 18 and 22, 2005.

## FACTS AND PROCEDURAL HISTORY

Plaintiff Lonnie Shepherd ("Shepherd")[1], individually and derivatively on behalf of Red Rock USA, LLC ("Red Rock"), filed a complaint in the Circuit Court of Walker County,

---

[1] The style of the complaint identifies plaintiff as "Lonnie Shepherd." However, within the text of the complaint, plaintiff is referred to as "Shepard." The court will use the "Shepherd" spelling in this opinion.

1

Alabama, on September 14, 2004. The complaint named the following defendants: Danny Hall ("Hall"), Hyde Jenkins, Hyde Jenkins, II, Carla Jenkins, Red Rock Express, Vidalia Dock and Storage, Inc. ("Vidalia Dock"), and Martin-Marieta Materials, Inc. ("MMM"). Shepard and Hall are residents of Walker County, Alabama. (Cmpt. ¶¶ 1,4). Red Rock is an Alabama Limited Liability Company that is organized and has its principal place of business in Walker County, Alabama. (*Id.* at ¶ 3). Hyde Jenkins, Hyde Jenkins II, and Carla Jenkins are residents of Mississippi. (*Id.* at ¶¶ 5-7). The complaint asserts that Red Rock Express and Vidalia Dock are entities, controlled by the Jenkinses, that are doing business in Walker County, Alabama. (*Id.* at ¶¶ 8-9).[2] MMM is a foreign, publically traded corporation doing business by agent in Walker County, Alabama. (*Id.* at ¶ 10).[3]

The complaint alleges that Shepherd is a 66.67% holder of membership in Red Rock, which produces and ships red rock and other stone and aggregate materials. (Cmpt. ¶¶ 1, 3). Hall has been employed by Red Rock. (*Id.* at ¶ 4). The Jenkinses are each 11.11% holders of membership in Red Rock. (*Id.* at ¶¶ 5-7). Red Rock was organized for the following purposes: to produce red rock and aggregate; to enter into a lease for mining such materials with Miller & Company; and to obtain a permit from United Land Corporation. (*Id.* at ¶ 12). Shepherd also began negotiations with MMM to purchase red rock and aggregate. (*Id.* at ¶ 14). According to the complaint, when the Jenkinses realized the profit potential of the red rock and aggregate

---

[2] According to Defendants' Notice of Removal, Vidalia Dock and Red Rock Express are Mississippi corporations with their principal places of business in Natchez, Mississippi. (Notice of Rem. ¶¶ 9-10).

[3] According to Defendants' Notice of Removal, MMM is a Delaware corporation with its principal place of business in Raleigh, North Carolina. (Notice of Rem. ¶ 11).

business, they tried to get a larger ownership interest in Red Rock from Shepherd. (*Id.* at ¶ 15). When Shepherd refused, allegedly, the Jenkinses with Hall, Vidalia Dock and Red Rock Express, and with the knowledge of MMM, acted in various ways to interfere with the business relationships of Red Rock. (*Id.* at ¶¶ 15-17). Among other things, the complaint alleges:

> The Jenkins defendants and the defendant Hall, along with agents, servants and employees of the Jenkins defendants, VIDALIA, and RED ROCK EXPRESS, acting by and through their agents, servants, and employees, being more particularly Ken Lilliman, Randy Morgan, and Chip Hall, converted property of the LLC, to wit; a gasoline storage tank, generators, and conveyors, on or about September 13, 2004, to attempt to steal a stockpile of red rock aggregate from the LLC
>
> . . .
>
> The Jenkins defendants, VIDALIA and RED ROCK EXPRESS, acting on their own behalf and through their agent, servant and employee Danny Hall, contacted Martin Marietta Materials, Inc. for the purpose of interfering with the relationship between Martin Marietta Materials, Inc. and the LLC, and further, for the purpose of securing contracts with Martin Marietta Materials, Inc., to the detriment of the LLC.

(*Id.* at ¶ 15b and d).

The complaint contains the following counts: (1) Count One - Negligence/Wantonness Breach of Duty;[4] (2) Count Two - Intentional Interference with Business and Contractual

---

[4] Count One states in part:

> . . . The defendant Danny Hall, as an employee of RED ROCK USA, LLC, owed a duty to use his best efforts for the LLC, keeping safe the proprietary information he obtained in the course of his employment.
>
> Contrary to these duties, and in express derogation thereof, the Jenkins defendants and Hall negligently, recklessly, and/or wantonly breached those duties to Shepard and the LLC. . . .

(Cmpt. ¶¶ 19-20).

Relationships;[5] (3) Count Three - Intentional Interference with Business and Contractual

Relationships;[6] (4) Count Four - Intentional Interference with Business and Contractual

Relationships;[7] (5) Count Five - Civil Conspiracy to Interfere with Business and Contractual

Relationships;[8] (6) Count Six - Conversion;[9] and (7) Count Seven - Derivative Count on Behalf

---

[5] Count Two alleges:

> The defendants Hyde Jenkins, Hyde Jenkins, II, Carla Jenkins, Danny Hall, VIDALIA and RED ROCK EXPRESS intentionally interfered with the business and contractual relationships of the plaintiffs with Martin Marietta Materials, Inc., which relationships were known to the defendants. . . .

(Cmpt. ¶ 23).

[6] According to Count Three:

> The defendants Hyde Jenkins, Hyde Jenkins, II, Carla Jenkins, Danny Hall, Martin Marietta Materials, Inc., VIDALIA and RED ROCK EXPRESS intentionally interfered with the business and contractual relationships of the plaintiffs with the LLC's investors, which relationships were known to the defendants. . . .

(Cmpt. ¶ 26).

[7] Count Four asserts:

> The defendants Hyde Jenkins, Hyde Jenkins, II, Carla Jenkins, Danny Hall, Martin Marietta Materials, Inc., VIDALIA and RED ROCK EXPRESS intentionally interfered with the business and contractual relationships of the plaintiffs with United Land Corporation and Miller & Company, which relationships were known to the defendants. . . .

(Cmpt. ¶ 29).

[8] Count Five states:

> The defendants Hyde Jenkins, Hyde Jenkins, II, Carla Jenkins, Danny Hall, Martin Marietta Materials, Inc., VIDALIA and RED ROCK EXPRESS have joined together in a conspiracy to divest the plaintiffs of their assets and to interfere with their lawful contractual and business relationships. . . .

of Shepherd and Red Rock USA, LLC.[10]

Defendants removed the action to this court on October 14, 2004. In Defendants' Notice of Removal, defendants assert that complete diversity of citizenship exist under 28 U.S.C. § 1332 because Hall has been fraudulently named as a defendant solely for purposes of defeating federal jurisdiction. (Notice of Rem. ¶¶ 12-13). In support of their contention that Hall has been fraudulently joined, defendants submitted an affidavit by Hall, in which he testified that he has been an employee of Red Rock since its formation. (Hall Affid. ¶ 3). He served as a superintendent and most recently was responsible for the sale of red rock in Walker County, Alabama. (*Id.* at ¶ 4). Hall stated that, prior to this litigation, he had never heard of MMM and had had no contact with the company or its employees. (*Id.*) He further testified that he had never spoken to any individual or entity about establishing any contract for Red Rock or any

---

(Cmpt. ¶ 32).

[9] Count Six alleges:

> The defendants Hyde Jenkins, Hyde Jenkins, II, Carla Jenkins, Danny Hall, Martin Marietta Materials, Inc., VIDALIA and RED ROCK EXPRESS, acting on their own behalf and by and through their agents, servants have joined together in converting the assets of the plaintiff to their own use, with no legal right to do so. . . .

(Cmpt. ¶ 35).

[10] Count Seven states:

> The defendants Hyde Jenkins, Hyde Jenkins, II, Carla Jenkins, and Danny Hall have breached their fiduciary duties to the LLC; their duties to act in the best interest of the LLC; their duties not to interfere with the business of the LLC; their duties to protect the business opportunities of the LLC. . . .

(Cmpt. ¶ 38).

other party to this litigation.  (*Id.* at ¶ 5).  In his affidavit, Hall denied having ever interfered with Red Rock's business and contractual relationships in any manner, and denied having ever converted any equipment owned by Red Rock for his personal use.  (*Id.* at ¶¶ 5-6).  Moreover, Hall testified that he had never used the conveyor described in plaintiffs' complaint because it is a complex piece of machinery and he does not know how to operate it.  (*Id.* at ¶ 7).  Finally, Hall stated:

> I have read Plaintiffs' Complaint and do not understand the allegations being asserted against me.  I have never spoken to anyone or taken any action which was intended to interfere with Red Rock's business contractual relationships.  As a superintendent of Red Rock, I have always acted in Red Rock's best interest, not to their detriment.  Moreover, I have never used any Red Rock equipment for any purpose other [than] those associated with my duties as superintendent.

(*Id.* at ¶ 8).

On November 2, 2004, plaintiffs filed a Motion to Remand, which asserted that complete diversity of citizenship does not exist as plaintiffs and Hall are all residents of Alabama.  On November 23, 2004, defendants Hall, the Jenkinses, Red Rock Express, and Vidalia Dock filed an opposition to plaintiffs' Motion to Remand or, in the alternative, a Motion to Defer a ruling on plaintiffs' motion until the completion of jurisdictional discovery.  These defendants also submitted deposition testimonies of Hall and Shepherd.

In his deposition, Hall testified that, as superintendent of Red Rock, he had responsibility for overseeing the operations at Bessie Mines and doing some sales work.  (Hall Depo., pp. 8-9, 23).  Hall stated that the first contact he had with Carla Jenkins was when she called his company cell phone looking for Shepherd.  (*Id.* at p. 26).  Hall testified that he spoke with Carla Jenkins on the phone a few times after that, but he did not speak with any other member of the Jenkins

family prior to Red Rock being shut down.  (*Id.* at pp. 37-39).  However, later in his deposition, Hall stated that he had conversations with the Jenkinses about the "equipment business end of it."  (*Id.* at p. 60).  Hall also testified that he received a call from Ralph Lyles ("Lyles"),[11] who told him that someone had cut the locks off a conveyor at the Miller facility.[12]  (*Id.* at p. 40).  Hall went to the location to verify what Lyles told him and to take photographs.  (*Id.* at pp. 41-42).

Hall also testified that he received a call from Jeff Smith, a salesman from Thorr Globel,[13] asking him to come to the Miller facility and prepare a conveyor machine for operation.  (Hall Depo., pp. 42-44).  Hall instructed two other employees of Red Rock, Hall's son Chip Hall and Randy Morgan, to load a fuel tank belonging to Red Rock into a truck and transport it to the Miller facility.  (*Id.* at pp. 46-47).  According to Hall, he meant to use the fuel tank to power the conveyer at the Miller facility.  (*Id.* at pp. 46-48).  Soon after Hall, his son, and Morgan arrived at the Miller facility with the tank, Shepherd drove up.  (*Id.* at pp. 44-45).  Shepherd prevented Hall and his companions from connecting the fuel tank to the conveyor machine.  (*Id.* at p. 45).  Shepherd also called local law enforcement, who investigated the situation and filed a report.  (*Id.* at pp. 50-51).  The fuel tank was then returned to Red Rock.  (*Id.* at pp. 49-50).  Hall testified that he had not had any contact with Shepherd after that encounter.  (*Id.* at p. 52).  Hall did have

---

[11] Hall's deposition suggests that Lyles is an employee of Miller & Company.  (Hall Depo., pp. 39-40).

[12] The Miller facility was a "screening plant" which was in a separate location from the mines used by Red Rock.  (Hall Depo, pp. 41-42).

[13] Thorr Globel is apparently a marketer of conveyor machines such as the one at issue here.

conversations with members of the Jenkins family prior to the time Red Rock's operations ceased. (*Id.* at pp. 56-57). Hall stated that he is being represented by the same attorney who is representing the Jenkinses, and that the Jenkinses alone are paying that attorney. (*Id.* at pp. 51-52).

In his deposition, Shepherd testified that he had never seen or heard Hall speaking with anyone from MMM. (Shepherd Depo., pp. 6-7). However, Shepherd also testified that Donnie Naramore ("Naramore") allowed him to overhear a conversation between Hall and Naramore, in which Hall stated that he had met with Vidalia Dock and MMM and seen MMM's contract with Vidalia Dock. (*Id.* at pp. 8-9). Shepherd assumed this contract was one to buy stone out of the Bessie Mine. (*Id.* at p. 9). According to Shepherd, Hall was supervisor for Red Rock from April to July 2004. (*Id.* at p. 16). Thereafter, Hall was transferred to handle local sales until his termination or layoff in late August 2004. (*Id.* at p. 17). According to Shepherd, Red Rock had only one transaction with MMM. (*Id.* at p. 22). With regard to the conveyor/fuel tank incident, Shepherd testified:

> Q: Now, did you ever see Mr. Hall steal a gasoline storage tank –
> A: Yes.
> Q: – from Red Rock?
> A: Yes.
> Q: Okay. Tell me where, when you saw that.
> A: When Donnie Naramore and I pulled up to the Miller & Company facility at Birmingport where we had red rock marshals stored there, we saw Danny Hall, Danny Hall, Junior and Randy Morgan there. They had cut the padlocks off of the generator that we had placed there, and they had cut the padlocks off the Thorr conveyor that Thorr had placed on the conveyor and were attempting to start it up and couldn't figure out how to make it run, and Vidalia Dock and Storage had their barges sitting underneath the conveyor and the boat there, and we asked and took pictures of them, and asked them what they were doing, and they all three told us that Vidalia Dock and Storage had hired them to load the five barges and that they

> were going to be delivered to Martin Marietta.
>
> So, we immediately called 911 and the Jefferson County despatched three squad cars out there and then Jefferson County found out that that was in Birmingham jurisdiction, so they called Birmingham and Birmingham dispatched two more cars.

(*Id.* at pp. 28-30). Shepherd testified that he did not actually see Hall cut the padlocks. (*Id.* at pp. 30, 42-43). Nor did he see Hall steal the gasoline tank, gasoline, generator, conveyor, or red rock. (*Id.* at p. 43-44). According to Shepherd, Red Rocks's gasoline storage tank, which was found in the possession of Hall, Hall's son and Morgan, was taken back to its original location under police supervision. (*Id.* at p. 44). The tank had been in a trailer attached to a truck driven by Morgan. (*Id.* at pp. 47-48).

On February 8, 2005, the magistrate judge entered an order granting plaintiffs' Motion to Remand and remanding this action to the Circuit Court of Walker County, Alabama. The magistrate judge based his remand order on his finding that there was a chance that a state court would determine that the complaint alleged a claim for conversion against Hall. The magistrate judge concluded:

> Plaintiff's complaint clearly states an arguable cause of action against Hall for conversion, even considered in light of the deposition testimony of both Hall and Shepherd. It is not necessary to consider whether there is a possibility that the state court also would find the complaint states a cause of action for intentional interference with a business relationship or conspiracy. Whether plaintiff may succeed on the conversion claim is not the primary inquiry; whether he has stated a valid cause of action is the gist of the matter. Because there is a possibility that the state court would find the complaint states one or more causes of action against Hall, this action is due to be remanded.

(February 8, 2005 Order, p. 10).

The magistrate judge's order advised the parties that they could seek review of the order of

remand pursuant to Federal Rule of Civil Procedure 72(a).

On February 18 and 22, 2005, defendants Hall, the Jenkinses, Red Rock Express, and Vidalia Dock[14] filed an objection to the magistrate judge's order. MMM did not join in the objection or file a separate objection.

## RULE 72(a) STANDARD

Federal Rule of Civil Procedure 72(a) states:

> A magistrate judge to whom a pretrial matter not dispositive of a claim or defense of a party is referred to hear and determine shall promptly conduct such proceedings as are required and when appropriate enter into the record a written order setting forth the disposition of the matter. Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made. The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

## MOTION TO REMAND STANDARD

Federal courts are courts of limited jurisdiction. *See Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001). Therefore, federal courts have power to hear only those cases that they have been authorized to hear by the Constitution or by Congress. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The limited nature of federal court jurisdiction has caused the Eleventh Circuit to favor remand of removed cases where federal jurisdiction is not absolutely clear. *Russell Corp.*, 264 F.3d at 1050. The removal statute is to be construed narrowly with doubt construed against removal. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941).

---

[14] On February 28, 2005, plaintiffs filed a Notice of Dismissal Without Prejudice, dismissing plaintiffs' claims against Vidalia Dock in this action.

A case may be removed to federal court only if the case could have been brought originally in federal court pursuant to the court's diversity or federal question jurisdiction. *See* 28 U.S.C. § 1441(a). However, diversity will not support removal jurisdiction if any properly joined defendants are citizens of the state in which the suit was originally filed. *See* 28 U.S.C. § 1441(b). The determination of whether federal jurisdiction exists must be made on the face of the plaintiff's well-pleaded complaint. *Pacheco De Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). An anticipated or even inevitable federal defense generally will not support removal. *Id*. at 1373 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392-93 (1987)). The burden of establishing federal jurisdiction is placed on the defendant, with all doubts resolved in favor of remand, *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). When multiple defendants are involved, all defendants must consent to removal. *Russell Corp.*, 264 F.3d at 1050.

## ARGUMENTS[15]

**I.     Defendants' Objection.**

Defendants contend that the magistrate judge's February 8, 2005 Order should be set aside pursuant to Federal Rule of Civil Procedure 72(a). According to defendants, pretrial orders on non-dispositive matters issued by a magistrate judge are reviewable under a clearly erroneous and contrary to law standard. *See Merritt v. International Broth. of Boilermakers,* 649 F.2d 1013, 1017 (5th Cir. 1981) (discussing 28 U.S.C. § 636(b)(1)(A) and stating, "[p]retrial orders of a magistrate . . . are reviewable under the 'clearly erroneous and contrary to law' standard; they

---

[15] This section summarizes the arguments made by the parties and does not necessarily reflect the conclusions reached by the court.

11

are not subject to a de novo determination as are a magistrate's proposed findings and recommendations . . ."). Defendants maintain that a decision on a Motion to Remand is a non-dispositive matter, as it merely answers the question of whether there is a basis for federal jurisdiction. *Delta Dental of Rhode Island v. Blue Cross & Blue Shield of Rhode Island,* 942 F.Supp. 740, 744-45 (D. R.I. 1996). A district judge, defendants contend, may modify or set aside any portion of a magistrate's order on a non-dispositive motion that is deemed to be clearly erroneous. *Federal Savings and Loan Ins. Corp. v. Commonwealth Land Title Ins. Co.*, 130 F.R.D. 507, 508 (D. D.C. 1990). Moreover, defendants argue, a magistrate's determination is clearly erroneous when the reviewing court, based on the entire body of evidence, is left with the definite and firm conviction that a mistake has been made. *Id.*

Defendants acknowledge that the Shepherd's deposition testimony, discussed above, appears to indicate some basis for a conversion claim. However, defendants argue, this determination is undermined when other portions of Shepherd's testimony are examined. Defendant's point to the following passage from Shepherd's deposition:

Q: . . . – we've established you didn't see Mr. Hall, Danny Hall, Senior, you didn't see him cut either lock at Miller Company, did you?
A: No.
Q: And you didn't see him steal a gas tank, did you?
A: No.
Q: All right. And you didn't see him steal a generator, did you?
A: No.
Q: And you didn't see him steal any conveyors, did you?
A: No.
Q: All right. And when you were down there that day, you didn't see him steal any Red Rock, did you?
A: No.
Q: Didn't put in his pocket and walk away, did he?
A: Not to my knowledge.
Q: Didn't put any in a bucket and walk away, did he?

12

    A:     No.
    Q:     Didn't put any in his pick-up truck and walk away, did he?
    A:     No.
    Q:     You didn't see him put any of that gasoline in his truck and drive off with it, did you?
    A:     No.

(Shepherd Depo., pp. 42-43). Defendants also draw the court's attention to Shepherd's testimony that the gas tank was in a trailer attached to Morgan's truck. (*Id.* at 47-48).

      Defendants argue that the magistrate judge held that there was a possibility a state court would find the complaint states a cause of action against Hall for conversion simply because he was at the Miller facility at the same time as the Vidalia barges and at the same time the cut locks were discovered. Defendants contend that there is no evidence that Hall was involved in the cutting of the locks, or that he was at the port to load stone into Vidalia barges. Further, defendants assert, there is no evidence that Hall attempted to convert or did convert any of Red Rock's property. Defendants conclude that the mere fact that Hall was at the port when the alleged conversion occurred does not create a colorable claim against him.

      Given Shepherd's testimony that he did not directly see Hall convert any of Red Rock's property, defendants argue, it is clear that Hall was joined as a defendant to this litigation for the sole purpose of defeating diversity of citizenship jurisdiction and his inclusion was fraudulent. While the burden is high for a removing defendant asserting a claim of fraudulent joinder, defendants contend, it is not insurmountable. Defendants maintain that the evidence proves Shepard has no colorable claim against Hall and his citizenship should not have been considered in evaluating removal.

      In addition to being factually erroneous, defendants assert, the magistrate's February 8, 2005 Order is contrary to law. Defendants state that, where a magistrate judge's order concerns

13

legal, rather than factual issues, the appropriate standard is whether the order is "contrary to law." *Bryant v. Hilst,* 136 F.R.D. 487, 488 (D. Kan. 1991). If any portion of the magistrate's order is contrary to law, defendants argue, the district court can modify or set aside the order. *Ariza v. U.S. West Communications, Inc.,* 167 F.R.D. 131, 133 (D. Colo. 1996).

Defendants argue that the magistrate judge incorrectly based his ruling on whether there was a "possibility of stating a valid cause of action." According to defendants, joinder is deemed fraudulent if it is "clear that there can be no recovery under the law of the state on the cause alleged, or on the facts in view of the law as they exist when the petition to remand is heard." *Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962),[16] *cert denied*, 376 U.S. 949 (1964). Joinder is fraudulent, defendants contend, if the facts asserted are shown to be "so clearly false as to demonstrate that no factual basis existed for any honest belief on the part of plaintiff that there was joint liability." *Parks*, 308 F.2d at 477.

According to defendants, Shepherd admits he has no factual basis for the claims he asserts against Hall. Defendants maintain that there can be no conclusion but that the claims alleged against Hall are "without right and made in bad faith." *Frontier Airlines, Inc. v. United Air Lines, Inc.,* 758 F.Supp. 1399, 1404 (D. Colo. 1989) (quoting *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914), and citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)).

**II.     Plaintiffs' Response.**

    **A.     Martin Marietta Materials, Inc.'s Failure to Join in Objection.**

---

[16] There have been significant contrary decisions by the Eleventh Circuit Court of Appeals since this 1962 Fifth Circuit case.

Plaintiffs note that MMM, which joined in the initial removal of this case, did not file an objection to the magistrate's February 8, 2005 Order.  According to plaintiffs, MMM's failure to object or join in the other defendants' objection is fatal to this court's subject matter jurisdiction and precludes the review of the February 8, 2005 order by a district judge.  By failing to object to the February 8, 2005 Order, plaintiffs contend, MMM waived any right to seek review of that order.  *See Maynard v. Board of Regents of Div. of Universities of Florida Dept. of Educ. ex rel. University of South Florida,* 342 F.3d 1281, 1286 (11th Cir. 2003) (finding failure to file timely objection to magistrate's non-dispositive orders before the district court constituted waiver of right to appeal those matters); *Farrow v. West,* 320 F.3d 1235, 1249 n.21 (11th Cir. 2003) (finding party waived issue by failing to object to magistrate courts ruling in district court).  Plaintiffs contends that MMM is, therefore, bound by the magistrate judge's determination that there is no federal subject matter jurisdiction in this action.  *See Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 314 (1988) (stating, "[t]he failure to name a party in a notice of appeal is more than excusable 'informality'; it constitutes a failure of that party to appeal"); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding plaintiff, who did not object to magistrate's ruling, waived the right to appeal that ruling even though defendants did file objections).  Further, plaintiffs argue, there is no dispute that MMM was legally required to have unambiguously consented to or joined in the other defendants' initial removal of this case.  *See Russell Corp. v. American Home Assur. Co.,* 264 F.3d 1040, 1049 (11th Cir. 2001) (stating, "[t]he law is well settled that in cases involving multiple defendants, all defendants must consent to the removal of a case to federal court. . . . Like all rules governing removal, this unanimity requirement must be strictly interpreted and enforced because of the significant federalism

concerns arising in the context of federal removal jurisdiction" (citations omitted)).  It is plaintiffs' position that, by failing to object to the magistrate's remand order, MMM has destroyed the unanimity required in order for this court to exercise removal jurisdiction.  As a consequence, plaintiffs argue, the district court is without jurisdiction to review the remand order.

      **B.**      **The Magistrate Judge's February 8, 2005 Order.**

Plaintiffs further maintain that defendants' objection fails to challenge the vast majority of the magistrate's factual findings, as set out in the February 8, 2005 Order.  *See Resolution Trust Corp. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993).[17]  Indeed, plaintiffs argue, it is impossible to discern from the defendants' objection which factual findings in the February 8, 2005 Order the defendants find erroneous.  In any event, plaintiffs contend, defendants do not dispute the magistrate's finding that the facts as alleged by the plaintiff are sufficient to create a jury question on the plaintiffs' claim for conversion.

According to plaintiffs, the defendants' objection also fails to adequately and specifically challenge the magistrate judge's legal conclusions.  In particular, plaintiffs assert, defendants'

---

[17] In *Resolution Trust Corp.*, the court stated:

> The district court found that all the hours the law firm claimed were reasonably expended in the litigation. Hallmark and Nutt make several challenges on appeal to the magistrate's finding that the hours were reasonable. However, all those arguments are now barred because they failed to object to those factual findings, despite the notice by the magistrate that such failure would bar them from attacking the findings on appeal. When the magistrate provides such notice and a party still fails to object to the findings of fact and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice.

996 F.2d at 1149 (citations omitted).

16

objection takes issue only with the magistrate judge's statement of the proper standard for evaluating claims of fraudulent joinder. Plaintiffs maintain that the magistrate judge was correct in relying on *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284 (11th Cir. 1998), for the proper standard. Plaintiffs highlight the following passage from *Triggs*:

> The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate.

154 F.3d at 1287.

## CONCLUSIONS OF THE COURT

The court determines that the magistrate judge's February 8, 2005 Order was not "clearly erroneous or contrary to law." F.R.C.P. 72(a). As the magistrate judge pointed out, the Eleventh Circuit gave an overview of fraudulent joinder in *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284 (11th Cir. 1998):

> Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity. Joinder has been deemed fraudulent in two situations. The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir.1983), *superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir.1993). The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts. *Coker*, 709 F.2d at 1440. In *Tapscott*, 77 F.3d at 1355 (11th Cir.1996), a third situation of fraudulent joinder was identified--i.e., where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant. *Id.* at 1360.

154 F.3d at 1287 (footnote omitted). Here, defendants are basing their arguments against removal on the first kind of fraudulent joinder. In their Objection to Plaintiff's Motion to Remand, defendants state:

> Defendants' Notice of Removal clearly proves Mr. Shepard has no colorable claim against Mr. Hall and there is no reasonable basis for any Alabama state court to hold Mr. Hall liable to Mr. Shepard . . .

(Defendants' Objection to Plaintiff's Motion to Remand, p. 2).

Under the circumstances in this case, the magistrate judge's determination that there is at least a possibility that plaintiffs can prove a cause of action against Hall for conversion was not clearly erroneous or contrary to law. In *Delmore v. Gonzales*, 2004 WL 2914321 (Ala. Civ. App. 2004), the Court of Civil Appeals of Alabama stated:

> To constitute conversion, there must be a wrongful taking or wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse of another's property. The gist of the action is the wrongful exercise of dominion over property to the exclusion or in defiance of a plaintiff's rights, where the plaintiff has a general or special title to the property or the immediate right to possession. *Ex parte SouthTrust Bank of Alabama, N.A.*, 523 So.2d 407 (Ala.1988).

2004 WL 2914321 at *4.

Here there is at least circumstantial evidence that Hall converted plaintiff's property. In particular, Hall admitted in his deposition that he instructed his son and Morgan to load plaintiffs' gas tank and transport it to the Miller facility. This "exercise of dominion" over the gas tank was done without Shepherd's knowledge and in response to a request from Jeff Smith, a person not employed by Red Rock. There is a factual issue as to whether this action was done "to the exclusion or in defiance of . . . plaintiff[s'] rights" in the gas tank. Further, the magistrate judge's reasoning in this regard is persuasive:

> In this case, the evidence is that Lonnie Shepherd and Donnie Naramore found Danny Hall, Danny Hall, Jr., and Randy Morgan at Birmingport. The locks had been cut off the generator and the conveyor. A tugboat and barges from Vidalia Dock, a competitor of Red Rock's, were in the river just below the conveyor. Hall, Hall, and Morgan were attempting to put gasoline in the generator and start

> the conveyor. . . . Under these circumstances, it is an issue for the jury whether Hall is liable for conversion. While Shepherd testified that he did not see Hall take the fuel tank or cut the locks to the generator and conveyor, a jury could infer that Hall was responsible for these acts. Further, the fact that Hall was found at Red Rock's conveyor at Birmingport at the same time Vidalia Dock barges were below the conveyor could allow a jury to find that Hall was there to load Red Rock's supply of red rock onto its competitor's barges, despite his disavowal of wrongdoing.

(February 8, 2005 Order, pp. 8-9).

Defendants' Objection to the magistrate judge's remand order will be overruled. The order of the magistrate judge will be affirmed.[18]

This 31st of March, 2005.

                          **ROBERT B. PROPST**
                    **SENIOR UNITED STATES DISTRICT JUDGE**

---

[18] Given this ruling, the court does not address plaintiffs' arguments concerning the impact of MMM not joining in defendants' objection to the February 8, 2005 Order. The court certainly does not affirmatively agree with plaintiff's argument in this regard.